IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| BRANDON O'NEAL KING, | |
| Plaintiff, | CIVIL ACTION NO.: 2:21-cv-106 |
| v. | |
| STUART BOYER, ROBERT MCCULLOUGH, and ZEAL SHARPE, | |
| Defendants. | |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants Boyer and McCullough's converted Motions for Summary Judgment.  Docs. 61, 80; see also Doc. 95.[1]  Plaintiff filed Responses opposing Defendants' Motions.  Docs. 64, 91.  Defendants replied.  Docs. 69, 93.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[1] In the Order converting Defendants' Motion to Dismiss into a Motion for Summary Judgment, the Court gave the parties 10 days to submit additional briefing or evidence if they chose.  Doc. 95.  Plaintiff filed a statement and one exhibit in response.  See Doc. 97.  I have considered these items in making this Report.

Plaintiff also moves the Court for leave to amend his Second Amended Complaint to assert claims against Defendants in their official capacities.  Id. at 3.  Because the Court recommends summary judgment be granted as to the claims against Defendants in their individual capacities and Plaintiff does not demonstrate good cause for this late amendment, I **DENY** this request.  Notably, even if the Court permitted Plaintiff to amend, Plaintiff's official-capacity claims would be subject to dismissal because Plaintiff fails to identify any unconstitutional policy or custom to support his claims.  See Ireland v. Prummell, 53 F.4th 1274, 1289 (11th Cir. 2022) (explaining 42 U.S.C. § 1983 official-capacity claims must be based on policy or custom, not a single incident of unconstitutional activity).

**PROCEDURAL HISTORY**

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourth Amendments. Docs. 1, 14. After frivolity review and an Order directing Plaintiff to amend his Complaint, Plaintiff filed his Second Amended Complaint, which is now the operative Complaint. Doc. 59. The following claims remain pending: Fourth Amendment illegal search claims against Defendant Boyer; Fourth Amendment excessive force claims against Defendants Boyer and McCullough; and Eighth Amendment excessive force claims against Defendant Sharpe. Doc. 68. Defendants Boyer, McCullough, and Sharpe each filed separate Motions to Dismiss. Docs. 61, 80, 84. There is significant overlap between the Motions filed by Defendants Boyer and McCullough, so they are addressed together here. Defendant Sharpe's Motion was addressed separately. See Doc. 96.

In his Second Amended Complaint, Plaintiff alleges he was shot on December 3, 2020. Doc. 59 at 5. Plaintiff alleges Defendant Boyer illegally searched his truck the next day without a warrant. Plaintiff further alleges on December 15, 2020, he went to the Appling County Sheriff's Department office to inquire about his vehicle and about an incident report related to the shooting. Plaintiff states when he arrived at the office, Defendant McCullough told Plaintiff there were outstanding warrants for his arrest and directed Plaintiff to walk with him. In the booking area, either Defendant Boyer or Defendant McCullough directed Plaintiff to place his hands behind his back. Plaintiff states he informed Defendants he could not place his hands behind his back because of the injuries he sustained during the shooting. Plaintiff states he was then "slammed by the officers" but was not cuffed. Id. at 6. Plaintiff state he was then taken into custody and placed in "detox." Id. Plaintiff alleges a doctor and a law enforcement officer then came to check on him and determined Plaintiff could not be detained because of his medical

issues, and Plaintiff was released.  Plaintiff alleges Defendant Boyer or Defendant McCullough's conduct—when the officer "slammed" Plaintiff—caused bleeding and aggravation of his injuries.  Plaintiff contends this conduct constitutes excessive force.

## PROPOSED UNDISPUTED MATERIALS FACTS[2]

Plaintiff's allegations arise out of two separate incidents.  The undisputed material facts related to the two incidents are set forth herein.

*Search Warrant Execution.*  On December 4, 2020, Defendant Boyer sought and obtained a search warrant to search Plaintiff's truck.  See Doc. 44-2.  An Appling County Magistrate Judge determined the search warrant application demonstrated probable cause a crime was committed and evidence of the crime would be located in the truck.  Id. at 23.  Defendant Boyer searched Plaintiff's truck that same day.

*Excessive Force Incident.*  Plaintiff arrived at the Baxley Police Department on December 15, 2020.  Doc. 59 at 5–6.  Defendant Boyer's body camera footage begins with Defendant Boyer leading Plaintiff to the booking desk.  Doc. 44-1 (body camera footage).  At that point, Plaintiff was handcuffed.  Plaintiff is wearing a baggy hoodie with the hood up and a surgical face mask.  Almost all of Plaintiff's face is obscured.  Plaintiff and Defendant Boyer have a brief conversation during their walk to the booking desk about the charges against Plaintiff.  Plaintiff expresses confusion and exasperation about the charge.

Once Plaintiff was at the booking desk, Plaintiff continued expressing confusion and exasperation about being taken into custody.  A booking officer then reads aloud from the

---

[2] These proposed findings of fact are based on a body camera recording of Plaintiff's arrest, search warrant materials, an exhibit Plaintiff submitted in response to the Court's request for additional briefing, and facts that are plainly undisputed based on the parties' pleadings.  Doc. 44-1; Doc. 44-2; Doc. 97 at 6–12.  As explained, the body camera recording of the arrest contradicts Plaintiff's factual allegations in the Complaint in material ways.

warrants for Plaintiff's arrest, listing off the various charges against Plaintiff. As the booking officer reads the arrest warrants, Plaintiff begins loudly protesting about the charges listed in the warrants and the facts giving rise to those charges. During the first portion of the video, it sounds like Plaintiff is clenching his jaw while speaking to the officers.

      An officer then removes the cuffs from one of Plaintiff's wrists so the booking officers could pat him down as part of the booking process. An officer informed Plaintiff officers needed to pat him down. Plaintiff responded "you ain't gotta do that" multiple times and announces he had been shot twice. Plaintiff becomes increasingly agitated and shouts, "I got on a fucking neck brace and all types of shit." Plaintiff increases his volume and shouts, "Y'all don't see that shit?" Plaintiff abruptly pulled back his hood, revealing the top portion of a neck brace he is wearing, and told officers again he had been shot twice. Officers begin moving closer to Plaintiff. One officer places his hand and arm on top of Plaintiff's left arm. Another officer removes the cuffs from Plaintiff's right wrist. Plaintiff shouts, "What the fuck's wrong with y'all?"

      One officer tells Plaintiff to "calm down." Plaintiff says he will not calm down and shouts multiple times to all the officers "get your hands off me" or some similar words. More officers move in toward Plaintiff and it appears at least three, perhaps four, officers place their hands on Plaintiff's arms and shoulders. Plaintiff begins to try to shake off the officers' hands while shouting at the officers. Plaintiff begins yelling "stop" repeatedly. Plaintiff then starts to tightly grip the edge of the booking desk—which was about chest height—and begins violently pulling away from the officers. The officers then grab Plaintiff's arms and pry his fingers from

the booking desk.  The officers then lower Plaintiff to the ground, placing him on his stomach.[3] The officers put their hands on Plaintiff's back and shoulders and hold on to Plaintiff's arms.  Plaintiff makes several audible noises as he is taken to the ground and repeats "look what they doing" several times.  Plaintiff tells the officers again he is in a neck brace and has been shot twice.  While on the ground, Plaintiff states several times "I ain't did shit."  An officer can be heard asking if Plaintiff will comply and explaining the officers must pat down Plaintiff.

After a few seconds on the ground, officers stand Plaintiff up at the booking desk.  The officers do not hold or restrain Plaintiff at that point.  Plaintiff's hands are free and uncuffed.  An officer directs Plaintiff to put his hands on the desk.  Plaintiff loudly slams his hands on the desk multiple times and shouts that his hands are on the desk.  Plaintiff shouts at the officers, "Y'all better get off me."  Plaintiff then removes his surgical mask.  An officer asks Plaintiff what he has in his mouth, referring to an obvious bulge in Plaintiff's check.  Plaintiff then, for the first time, explains his jaw is wired shut because he was shot in the face.  Plaintiff then shouts he was shot in the side and lifts up his shirt to show a surgical drainage tube protruding from his abdomen.  Plaintiff drops his shirt, and he continues shouting obscenities at the officers and slamming his hands on the booking desk.  Plaintiff begins to calm down and explains he recently left a trauma unit.  Plaintiff is eventually led away, uncuffed, from the booking desk, further into the facility.

Plaintiff was ultimately released from the Appling County Jail that day.  Later that same day, Plaintiff went to an Appling Healthcare System office in Baxley, Georgia.  Plaintiff complained to the healthcare provider about damage to his stitches and feeding tube and

---

[3] Contrary to the allegations in Plaintiff's Complaint, the officers do not "slam" Plaintiff to the ground.  While the maneuver is not gentle, it is also not exceptionally forceful.

5

explained he had been in altercation with law enforcement.  Doc. 97 at 6–12.  Plaintiff was diagnosed with a soft tissue injury to his left chest and abdomen, but no other issues or injuries were noted.  Id. at 10.  The disposition listed on the medical record is "HOME OR SELF-CARE."  Id.  Plaintiff checked himself out before receiving any additional testing.  Id.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case

6

at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants Boyer and McCullough argue Plaintiff's claims against them should be dismissed because they are entitled to qualified immunity. Doc. 61 at 3; Doc. 80 at 3. Plaintiff opposes these Defendants' basis for dismissal. Docs. 64, 91.

**I.   Legal Standard**

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Hardy v. Broward Cnty. Sheriff's Off., 238 F. App'x 435, 439 (11th Cir. 2007) (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). Then, the burden shifts to the plaintiff to show the defendant is not entitled to qualified immunity. Id.

Plaintiff states in a conclusory fashion Defendant Boyer's actions were not discretionary in nature.[4] Doc. 64 at 1. Discretionary authority includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Roberts v. Spielman, 643 F.3d 899, 903 (11th Cir. 2011) (cleaned up); see also

---

[4]   Plaintiff does not dispute Defendant McCullough was acting in his discretionary authority. Compare Doc. 64 at 1 with Doc. 91. Even if he had, Defendant McCullough plainly was acting within his discretionary authority when effectuating Plaintiff's arrest.

7

Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004) ("In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.").

Plaintiff's claims concern Defendant Boyer's conduct during the search of Plaintiff's vehicle and his arrest, and Plaintiff contends these actions were not with the scope of Boyer's discretionary authority. Plaintiff is incorrect. Performing searches and assisting in arrests are legitimate job-related functions within the power of law enforcement bodies. See Pair v. City of Parker Fla. Police Dep't, 383 F. App'x 835, 838–39 (11th Cir. 2010). Furthermore, the record shows Defendant Boyer arrested Plaintiff based on several arrest warrants and searched Plaintiff's vehicle based on a search warrant. Thus, Defendant Boyer, in searching Plaintiff's vehicle and arresting him, was plainly acting within the scope of his discretionary authority.

Having concluded Defendants Boyer and McCullough were acting in the scope of their discretionary authority, the burden shifts to Plaintiff to show: (1) whether the facts viewed in the light most favorable to Plaintiff establish a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013); see also Mousa v. Bd. of Trustees of Univ. of Ala., No. 7:12-CV-03008, 2014 WL 1338110, at *1 (N.D. Ala. Mar. 31, 2014). "Strict adherence to the order of those two inquiries is not required." Fish v. Brown, 838 F.3d 1153, 1162 (11th Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "In appropriate cases, it is within a district court's discretion to assume that a constitutional violation occurred in order to address, in the first instance, the question of whether such a presumed violation was

8

clearly established on the date of the incident leading to the suit." Id.  Even when there is a genuine factual dispute regarding whether a constitutional violation occurred, if the defendant did not act in violation of clearly established law, then the claim will not proceed past the motion to dismiss stage.  See Nolen v. Jackson, 102 F.3d 1187, 1191 (11th Cir. 1997) (granting motion to dismiss on the grounds of qualified immunity because there was no support the conduct alleged in the case constituted a violation of clearly established law).  With this framework in mind, the Court addresses qualified immunity as to each claim and Defendant.

## II.     Defendant Boyer Is Entitled to Qualified Immunity on Plaintiff's Illegal Search Claims

In his Second Amended Complaint, Plaintiff asserts Defendant Boyer violated the Fourth Amendment by searching Plaintiff's truck without a warrant.  Doc. 59 at 5.

"Where [an] alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012).  However, a defendant exercising a search warrant is not entitled to a qualified immunity defense where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Id.  "The threshold for establishing this obviousness is a high one." Mehta v. Foskey, 877 F. Supp. 2d 1367, 1376 (S.D. Ga. 2012) (citing id.).  Indeed, a defendant relying on a magistrate-issued search warrant is entitled to qualified immunity unless it would have been "plainly incompetent" to rely on the warrant because the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Messerschmidt, 565 U.S. at 546.

In his various Complaints, Plaintiff alleges Defendant Boyer performed a search on Plaintiff's car without a search warrant.  Doc. 21 at 4; Doc. 59 at 5.  However, the record shows

9

Defendant Boyer sought and received a search warrant to search Plaintiff's car. Doc. 44-2. In his Response to Boyer's Motion, Plaintiff now admits Defendant Boyer obtained a search warrant for the search of his car. Doc. 91 at 1–2. Plaintiff does not otherwise challenge the validity of the warrant or the search and appears to have abandoned his Fourth Amendment illegal search claim. Id. Because Plaintiff admits Defendant Boyer searched Plaintiff's car pursuant to a search warrant and Plaintiff raises no challenges to the validity of the warrant or the search, Defendant Boyer is entitled to qualified immunity on Plaintiff's Fourth Amendment illegal search claims. Therefore, I **RECOMMEND** the Court **GRANT** Defendants' converted Motion for Summary Judgment as to all Fourth Amendment illegal search claims against Defendant Boyer.

### III. Defendants Boyer and McCullough Are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claims

Plaintiff asserts Defendants Boyer and McCullough used excessive force while arresting him. Assuming, without deciding, Plaintiff sufficiently alleges a constitutional violation in his Second Amended Complaint, Plaintiff has not shown the violation of a constitutional right was clearly established.

The violation of a constitutional right is clearly established if a reasonable official would understand his conduct violates that right. See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). A plaintiff can meet the clearly established requirement in one of three ways:

(1) by pointing to a materially similar decision the Supreme Court, the Eleventh Circuit Court of Appeals, or of the supreme court of the state in which the case arose;

(2) by establishing that a broader, clearly established principle should control the novel facts of the case; or

(3) by showing the case is one of those rare ones that fits within the

10

> exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022). For the first and second methods, the plaintiff must point to decisional law. Id. For the second and third methods, the court will look for "obvious clarity," which refers to a "principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." Id. "Obvious clarity" is a "narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." Id.

Plaintiff fails to show the constitutional violation was clearly established at the time of the offense. Plaintiff alleges Defendants used excessive force against him when he was plainly injured and was trying to inform Defendants of his injuries. It is undisputed Defendants were attempting to effectuate Plaintiff's arrest pursuant to duly issued warrants. The warrants charged Plaintiff with various felonies, some of them violent ones. Defendants were attempting to search Plaintiff's person before taking him into custody at the detention facility. The officers were plainly attempting to search Plaintiff to avoid introducing contraband, including weapons, into the detention center.

Defendant Boyer's body camera video fully depicts the alleged unconstitutional conduct. In the video, Plaintiff is visibly agitated, banging his hands on the booking desk, ignoring commands from the booking officer, yelling obscenities at officers, and demanding the officers stop touching him. The officers provided several warnings and instructions to Plaintiff, which he ignored. After Plaintiff demonstrated he would not comply, Defendants pulled Plaintiff away from the booking desk and placed him on the ground. Once Plaintiff was on the ground, Defendants restrained Plaintiff for only a few seconds, and when Plaintiff indicated he would comply, he was returned to a standing position, unrestrained. The use of force depicted on the

11

video is plainly reasonable given the circumstances, and Plaintiff has offered to nothing to show the law clearly established Defendants' conduct was unconstitutional.

Plaintiff's argument Defendants' use of force was excessive because of Plaintiff's preexisting injuries is unconvincing.  The full extent of Plaintiff's injuries was not apparent to the officers until after the alleged unconstitutional use of force.  At the time Defendants placed Plaintiff on the ground and restrained him, the officers only knew Plaintiff had been shot 12 days earlier and Plaintiff was wearing a neck brace.  Additionally, Defendants had observed Plaintiff walk on his own into the booking area without any apparent difficulty, even though Plaintiff's hands were cuffed.  Based on these undisputed facts, there is no indication Defendants were constitutionally obligated to use any less force than they did use to effectuate Plaintiff's arrest.[5]  It is also noteworthy the alleged use of force caused, at the most, minimal injuries—namely, a soft tissue injury to his left chest and abdomen, but no other issues or injuries, and with no discernible required medical treatment.  Doc. 97 at 10.  Ultimately, the actual force used by Defendants and the injury inflicted were both minor in nature.

Plaintiff offers only conclusory arguments and citations to irrelevant Eighth Amendment excessive force cases to show this alleged constitutional violation was clearly established at the time of Defendants' conduct.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1284 (11th Cir. 1998) ("In order to defeat the qualified immunity defense, it was incumbent upon [the plaintiff] to demonstrate the law was clearly established that what these defendants did, in this case,

---

[5]  To be sure, once Plaintiff was returned to a standing position, Plaintiff revealed he had been shot in the face, his jaw was wired shut, he had a surgical drainage tube in his abdomen, and he had recently been released from a trauma center.  Even if these facts would have required Defendants to act differently, the facts were not known to the officers at the time of the use of force.  There is no allegation Defendants used any additional force—unconstitutional or otherwise—after Plaintiff revealed the full extent of his injuries.

violated federal law."); Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) ("Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms."). Plaintiff does not point to any materially similar case and Plaintiff does not show any particular legal principle applies with "obvious clarity," such that the principle would provide notice Defendants' conduct would amount to a constitutional violation. Additionally, the Court has not identified any authority suggesting the use of ordinary force on an injured or vulnerable individual is plainly unlawful when the individual is resisting lawful orders. Indeed, the case law addressing similar situations reaches the opposite conclusion, indicating that use of force against a non-resisting, previously injured plaintiff is not plainly unlawful. See Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (granting qualified immunity to officers who slammed a plaintiff who had an arthritic knee and recently suffered a stroke into the wall because, while the force may have been unnecessary, the application of the excessive force standard would not inevitably lead a reasonable officer to conclude the force was unlawful); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559–60 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994) (finding officer was entitled to qualified immunity where the officer pushed a handcuffed plaintiff because, even though the push was unnecessary, it was not plain the force was unlawful).

In sum, Plaintiff is unable to show Defendants' actions violated clearly established law as to his Fourth Amendment excessive force claims. It is Plaintiff's burden to show the right was clearly established, and Plaintiff has not done so. See Coffin, 642 F.3d at 1013. Therefore, I **RECOMMEND** the Court **GRANT** Defendants' converted Motion for Summary Judgment as to all Fourth Amendment excessive force claims against Defendants Boyer and McCullough.

13

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the

appropriate judgment.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of August, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA